# In the United States Court of Federal Claims

**No. 18-1411C**

**Issued: February 5, 2025**

**Filed: March 14, 2025[1]**

```
* * * * * * * * * * * * * * * * * *    *
                                       *
LITE MACHINES CORPORATION,             *
                                       *
              Plaintiff,               *
                                       *
v.                                     *
                                       *
UNITED STATES,                         *
                                       *
              Defendant.               *
                                       *
                                       *
                                       *
* * * * * * * * * * * * * * * * * *    *
```

 **Ronald J. Waicukauski**, Price Waicukauski Joven & Catlin, LLC, Indianapolis, I.N., for plaintiff.

 **Elizabeth M. D. Pullin**, Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With her were **Franklin E. White, Jr.**, Assistant Director, Commercial Litigation Branch, **Patricia M. McCarthy**, Director, Commercial Litigation Branch, and **Brett A. Shumate**, Acting Assistant Attorney General, Civil Division, Department of Justice.

# O P I N I O N

<u>**HORN, J.**</u>

 The above captioned case is part of a trio of cases which involve some of the same facts and issues, two of which are in this court and assigned to the undersigned. The first, Case No. 18-403C, is proceeding smoothly and without difficulties through discovery, and includes classified information. The complaint in the second, the above captioned case, Case No. 18-1411C, was filed after the first Lite Machines Corporation case, Case No. 18-403C, and has different counsel for plaintiff, Lite Machines Corporation. The third case was filed in the United States District Court for the Central District of California and is now on appeal in the United States Court of Appeals for the Federal Circuit.

---

[1] The court's Opinion was provided to the parties on February 5, 2025. After review, the court's Opinion is issued for public distribution.

On October 15, 2018, plaintiff filed a First Amended Complaint which alleged four counts in the above captioned case. Thereafter, the court granted defendant's two motions for extension of time to file an answer, extending the due date of the Answer to December 21, 2018. On December 20, 2018, defendant filed a motion to dismiss plaintiff's First Amended Complaint for failure to state a claim, and plaintiff filed its response on January 17, 2019. Following this, the court granted three more unopposed motions for extension of time for defendant to file its reply. Defendant filed its reply on February 22, 2019. Thereafter, with leave of the court, plaintiff filed a sur-reply on March 11, 2019. The court granted plaintiff's motion for oral argument, and oral argument was held on April 1, 2019. On May 15, 2019, plaintiff moved for leave to file a Second Amended Complaint. On May 21, 2019, the undersigned granted defendant's motion to dismiss the First Amended Complaint in part, and dismissed Counts I and III and deferred ruling on Counts II and IV, after considering all the facts in the case, both public and classified. On June 18, 2019, plaintiff filed a motion for reconsideration pursuant to Rule 59(a) of the Rules for the Court of Federal Claims (RCFC), "request[ing] that this Court reconsider its dismissal of LMC's [Lite Machines Corporation] breach of contract claim (Count I) . . . LMC is not seeking reconsideration of the Court's dismissal of Count III." (alterations and omission added). The court held status conferences on July 3, 2019, and July 30, 2019, to further discuss procedures incident to arguing a case involving classified information. On August 27, 2019, defendant filed a motion to stay proceedings

> until such time as plaintiff, Lite Machines Corporation (Lite), obtains counsel with the necessary security clearances.[2] Counsel for Lite has authorized us to state that Lite opposes this motion.
>
> Lite performed a classified contract. Counsel for Lite must not only avoid making public classified information, counsel for Lite must also understand the distinction between public information and classified information to avoid mistakes. Theoretically, no classified information should be shared with Lite's counsel, but this approach to litigation is difficult in practice. The risks associated with this approach are significant. Thus, it is in the interests of justice and judicial economy to stay these proceedings until Lite obtains counsel with the necessary security clearances.

(footnote in original). Plaintiff's counsel filed a status report on October 28, 2019, stating that "[s]ince Lite's counsel now has the necessary security clearances, the stay should be lifted and the Court should allow discovery to proceed without further delay." (alteration added). The next day, October 29, 2019, defendant requested a hearing. Defendant justified its request, stating:

> In short, it is likely that this case can be resolved without discovery. Moreover, discovery would pose logistical hurdles, require unnecessary expenses, and raise concerns about inadvertent disclosure of classified

---

[2] "We [defendant] are referring to counsel of record." (alteration added).

> information. To permit a full and candid discussion of the need for discovery, we recommend that the hearing be held in a classified setting.
>
> As recounted in the Opinion quoted above, Lite has previously sought leave to file a second amended complaint. This is another matter for discussion at the classified status conference.

The court held a hearing on November 15, 2019. Following the hearing, the parties filed a Joint Status Report on July 30, 2021, stating:

> Since the last status conference on November 15, 2019, progress in this matter has been delayed because of ongoing issues with COVID-19 and complications arising from the classified nature of the case. In November 2020, Plaintiff requested a modification in the classified status of this matter and received a decision from the relevant agency authority in June 2021. On July 21, 2021, the parties had a meeting to discuss procedures going forward. No agreement was reached but further discussions are expected.
>
> While these discussions on procedure are ongoing, Plaintiff proposes to move forward in the litigation by filing a new proposed amended complaint in this matter within 60 days, by September 29, 2021. Defendant, the United States, agrees with this deadline and is filing this report with the consent of Plaintiff.

Plaintiff filed its Second Amended Complaint on September 29, 2021, and an Unclassified Addendum to the Second Amended Complaint on December 22, 2021. Defendant filed a motion to dismiss the Second Amended Complaint on December 17, 2021. This court issued an Order on January 18, 2022, stating in part:

> On January 11, 2022, the court held a hearing in the above captioned case. As discussed at the hearing, based on counsel's representations, and in order to promote litigation efficiency, as well as to avoid continuing to litigate a motion which would not resolve the actual allegations plaintiff seeks to allege, on or before **Monday, January 31, 2022**, plaintiff may file a third amended complaint. Additionally, the plaintiff shall provide a side-by-side comparison between the substance of the allegations in each of the counts in the third amended complaint to the counts in the first amended complaint and the second amended complaint, indicating which allegations brought by plaintiff were resolved by the earlier decision in the court's May 21, 2019 Opinion.

(emphasis in original). Plaintiff filed its Third Amended Complaint on January 31, 2022. Count I of plaintiff's Third Amended Complaint appears to be based on the same question of law that served as the basis for Count I of plaintiff's First Amended Complaint and that is at issue in plaintiff's June 18, 2019 motion for reconsideration of the court's decision.

On August 17, 2020, prior to plaintiff filing its Second Amended Complaint, Paul and David Arlton, plaintiff's principals, filed suit against a third-party, AeroVironment, Inc., in the United States District Court for the Central District of California. See Arlton et al v. AeroVironment, Inc., No. 20-7438, 2021 WL 1589302, at *1 (C.D. Cal. Apr. 22, 2021), vacated in part, 2021 WL 4902186 (C.D. Cal. June 24, 2021). The Arltons' Complaint in that case alleges that AeroVironment infringed U.S. Patent Number 8,042,763 ('763 Patent), stating:

> 9. JPL [Jet Propulsion Laboratory] and NASA [National Aeronautics and Space Administration] have now sent the Mars Helicopter to Mars with NASA's Mars 2020 Perseverance Rover as a part of NASA/JPL's Mars Exploration Program. The Mars Rover, with the Mars Helicopter aboard, launched on July 30, 2020 from Cape Canaveral Air Force Station in Florida.

> 10. According to AeroVironment, its contributions to the Mars Helicopter include design and development of the helicopter's airframe and major subsystems, including its rotors, rotor blades, electric rotor hubs, and flight control mechanisms.

> 11. Defendant AeroVironment, however, is not the developer of the primary technology related to the Mars Helicopter including the helicopter's airframe and major subsystems, such as its electric rotor drive systems and flight control mechanisms. Indeed, it was not AeroVironment's ingenuity at all that made the Mars Helicopter possible. Instead, on information and belief, AeroVironment willfully copied significant portions of the Arltons' technology for the Mars Helicopter. The enabling technology AeroVironment copied from the Arltons is critical to the first successful flight of an aircraft on another planet – Mars. Credit and remuneration for this triumph of technology rightfully belongs to the Arltons, not AeroVironment.

(alterations added). AeroVironment's Answer to the Arltons' Complaint "asserts throughout that 'Plaintiff's have no remedy against AeroVironment due to the applicability of 28 U.S.C. § 1498[.]'" Arlton et al v. AeroVironment, Inc., 2021 WL 1589302, at *4 (alteration in original). The statute at 28 U.S.C. § 1498 states in relevant part:

> Whenever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same, the owner's remedy shall be by action against the United States in the United States Court of Federal Claims for the recovery of his reasonable and entire compensation for such use and manufacture. . . .

> For the purposes of this section, the use or manufacture of an invention described in and covered by a patent of the United States by a contractor, a subcontractor, or any person, firm, or corporation for the Government and

4

with the authorization or consent of the Government, shall be construed as use or manufacture for the United States.

28 U.S.C. § 1498(a) (effective October 28, 1998) (omission added). According to a statement in the California District case, "NASA filed a 'Statement of Interest of the United States' stating that the United States granted its authorization and consent for Defendant's alleged use and manufacture of patented inventions claimed in the '763 Patent." Arlton et al v. AeroVironment, Inc., 2021 WL 1589302, at *5. AeroVironment moved for summary judgment. See id. at *12. In opposition to the AeroVironment's motion, the Arltons argued

> that NASA and JPL lacked the authority to contract with Defendant, and therefore could not authorize and consent to the accused activities. Specifically, Plaintiffs argue that the Government "was obligated to award an SBIR [Small Business Innovation Research] Phase III sole-source prime contract to Lite for the Mars Helicopter program to the greatest extent practicable[,]" and that it violated the SBIR Statute and SBIR Policy Directive by awarding the contract to Defendant.

Id. at *9 (first alteration added). The California District Court Judge granted AeroVironment's motion for summary judgment, citing to the undersigned's Opinion on defendant's motion to dismiss plaintiff's First Amended Complaint, in the District Court case, stating that:

> The Court finds that the Government did not lack the authority to contract with Defendant. Although not binding, the COFC's [Court of Federal Claims] analysis of the SBIR Statute in Lite Machines is persuasive. In evaluating whether the SBIR Statute required the Government to continue to contract with Lite, the court found the SBIR Statute "does not require that the government award a Phase III contract to a recipient of a Phase I or Phase II SBIR award under which the relevant technology was developed." Lite Machines, 143 Fed. Cl. at 283. As the Court reasoned, "§ 638(e)(4)(c) indicates that Phase III contracts are to be awarded 'where appropriate.'" Id. (citing § 638(e)(4)(c)); see also id. at 284 (citing § 638(r)(1) (stating that, when a small business concern is awarded a Phase II agreement, "a Federal agency may enter into a Phase III agreement with that business concern for additional work to be performed during or after the Phase II period") (emphasis added)). Moreover, as evidence by the use of the phrase "[t]o the greatest extent practicable," "§ 638(r)(4) appears to be aimed at encouraging, but not requiring, an agency to seriously consider awarding a contract to the developer of the technology in the context of a SBIR Phase III award relating to technology developed as part of the SBIR program." Id.

Arlton et al v. AeroVironment, Inc., 2021 WL 1589302, at *9 (first alteration added; emphasis in original). Following the District Court's grant of summary judgment, the Arltons requested leave to amend their Complaint in the District Court case and also to

join Lite Machines Corporation as a plaintiff to that suit. <u>See</u> <u>id.</u> at *11-12. These motions were denied, and the Arltons appealed. The Arltons' appeals are currently before the United States Court of Appeals for the Federal Circuit as Case Nos. 2021-2049 and 2024-1084. Also before the Federal Circuit, and related to the Arltons' two appeals, is Case No. 2024-1159, which is a cross-appeal filed by AeroVironment.

In its motion for reconsideration of this court's dismissal of Count I of plaintiff's First Amended Complaint, plaintiff states that "reconsideration is warranted to prevent manifest injustice because the Court based its decision on issues not raised by the parties, and the lack of briefing on those issues led the Court into error." Plaintiff argues that "this Court considered whether 15 U.S.C. § 638(r)(4) was a mandatory provision that should be incorporated into the contract under the <u>Christian</u> doctrine. (Dkt. 34 at 19-21.) This issue was not raised in the parties' briefs, and the Court's conclusion was erroneous as a result."[3] The statute at 15 U.S.C. § 638(r)(4) states that, "[t]o the greatest extent practicable, Federal agencies and Federal prime contractors shall issue Phase III awards relating to technology, including sole source awards, to the SBIR and STTR [Small Business Technology Transfer] award recipients that developed the technology." 15 U.S.C. § 638(r)(4) (2012) (alterations and emphasis added). Plaintiff, quoting the Small Business Administration (SBA), further argues that:

> Consistent with the language of the statute and the [Small Business Administration's] Policy Directive, 15 U.S.C. § 638(r)(4) is known within the SBA as the "Phase III Mandate." The SBIR Data Rights tutorial on the SBA website uses this term in describing the mandatory character of this provision:
>
>> Another valuable Phase III right is what is known as the "Phase III mandate." This mandate states that a Phase III must be awarded to the SBIR or the STTR developer to the greatest extent practicable. This is the other side of the sole-source right. Not only can an SBIR firm receive a Phase III sole-source, but the government in fact must award a Phase III to the SBIR firm that developed the Phase III technology to the greatest extent practicable. The phrase "to the greatest extent practicable" provides a very narrow exception. However, it is exactly that, a very narrow exception. It would seem that it would almost never be possible to justify why it is not "to the greatest extent practicable" to award continuation of the technology to the firm that first invented it. . . . SBA has strengthened this Phase III mandate in its Directive by

---

[3] The <u>Christian</u> doctrine, however, was referred to by plaintiff in its First Amended Complaint and was discussed by the parties, including plaintiff's attorney, at an oral hearing on April 1, 2019, which was a hearing on defendant's motion to dismiss the four counts of the First Amended Complaint. At or after the hearing, plaintiff's attorney did not express any desire, or make a request, to further brief a <u>Christian</u> doctrine issue.

requiring federal agencies to justify in writing why they did not award a Phase III to the SBIR firm that developed the technology.

SBIR Tutorial, Phase III, Part Two: Why Phase III Is So Valuable, https://www.sbir.gov/sites/all/themes/sbir/dawnbreaker/img/documents/Course9-Tutorial4.pdf (last visited June 18, 2019) (Emphasis added).

(emphasis and omission in plaintiff's brief).

Plaintiff states that this court, in interpreting the statute at 15 U.S.C. § 638(r)(4),

looked to the language of 15 U.S.C. § 638(r)(1), which states that "a Federal agency **may** enter into" an SBIR Phase III agreement with a small business. Id. (emphasis added). And since there was no requirement that the Government make any particular SBIR Phase III award, this Court concluded that there was no mandate that such an award be issued "to the greatest extent practicable." But this analysis erroneously conflates the conditional statement (**if** the Government makes an SBIR Phase III award) with the mandated requirement (**then** it was required to comply with 15 U.S.C. § 638(r)(4)), which case law shows is improper.

(emphasis in original). According to plaintiff,

LMC's [Lite Machine Corporation] complaint alleges, in substance, that the requisite conditions for application of the mandatory language of § 638(r)(4) in favor of LMC were all satisfied and the Government, nonetheless, reneged on its obligation to make follow-on Phase III awards to LMC. The Court, however, impermissibly re-writes the mandatory language of § 638(r)(4), interpreting the statute as permissive or merely suggestive: "agencies shall **attempt** to award, to the greatest extent practicable"; "appears only to direct that, prior to award, agencies **consider** using the contractor which developed the SBIR technology . . . "; and "appears to be aimed at **encouraging**, but not requiring." (Dkt. 34 at 21- 22) (emphasis added). But the statute is stronger and more binding than the Court suggests. The words "attempt", "consider" and "encourage" appear nowhere in the statute.

What is in the statute is the mandatory word "shall." The word "shall" creates a binding promise by the Government of a contractual benefit to its SBIR contractors. To be sure, the benefit is not unconditional but when the applicable conditions are satisfied, the Government is not merely encouraged to keep its promise, or to consider keeping its promise, or to attempt to keep its promise, it is obliged to "the greatest extent practicable" to "issue Phase III awards relating to technology" to the "SBIR and STTR award recipients that developed the technology." 15 U.S.C. §638(r)(4).

(emphasis and omission in original; alteration added).

The United States Court of Appeals for the Federal Circuit has stated that "[t]he decision whether to grant reconsideration lies largely within the discretion of the [trial] court." See Yuba Nat. Res., Inc. v. United States, 904 F.2d 1577, 1583 (Fed. Cir.) (alterations added), reh'g denied (Fed. Cir. 1990). "A motion for reconsideration is not intended . . . to give an unhappy litigant an additional chance to sway the court." Stueve Bros. Farms, LLC v. United States, 107 Fed. Cl. 469, 475 (2012) (internal quotations omitted; ellipse in original), aff'd, 737 F.3d 750 (Fed. Cir. 2013); see also L-3 Commc'ns Integrated Sys., L.P. v. United States, 98 Fed. Cl. 45, 49 (2011) (quoting Alpha I, L.P. ex rel. Sands v. United States, 86 Fed. Cl. 568, 572 (2009) (quoting Matthews v. United States, 73 Fed. Cl. 524, 525 (2006))). "It is not sufficient for plaintiffs to reassert the same arguments they made in earlier proceedings, nor can plaintiffs raise new arguments that could have been made earlier." Lee v. United States, 130 Fed. Cl. 243, 252 (2017), aff'd, 895 F.3d 1363 (Fed. Cir. 2018). Therefore, "a motion for reconsideration 'should not be based on evidence that was readily available at the time the motion was heard.'" Johnson v. United States, 127 Fed. Cl. 661, 664 (2016) (quoting Seldovia Native Ass'n Inc. v. United States, 36 Fed. Cl. 593, 594 (1996), aff'd, 144 F.3d 769 (Fed. Cir. 1998))). "'Post-opinion motions to reconsider are not favored . . . especially where a party has had a fair opportunity to litigate the point in issue.'" Wagstaff v. United States, 118 Fed. Cl. 172, 175 (quoting Aerolease Long Beach v. United States, 31 Fed. Cl. 342, 376, aff'd, 39 F.3d 1198 (Fed. Cir. 1994)) (alteration in original), aff'd, 595 F. App'x 975 (Fed. Cir. 2014).

Plaintiff's motion for reconsideration states that

Rule 59(a)(1) of the Rules of the United States Court of Federal Claims provides that the Court may, on motion of either party, reconsider any or all issues previously decided. The decision whether to reconsider a previous decision "is left to the sound discretion of the trial court." Kaplan v. United States, 115 Fed. Cl. 491, 493 (2014).

RCFC 59(a) provides, in relevant part:

**(a)   In General.**

**(1)   *Grounds for New Trial or Reconsideration*.** The court may, on motion, grant a new trial or a motion for reconsideration on all or some of the issues—and to any party—as follows:

**(A)**   for any reason for which a new trial has heretofore been granted in an action at law in federal court;
**(B)**   for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court; or

**(C)** upon the showing of satisfactory evidence, cumulative or otherwise, that any fraud, wrong, or injustice has been done to the United States.

RCFC 59(a)(1) (2024) (emphasis in original). A Judge of the United States Court of Federal Claims has noted: "Pursuant to RCFC 59(a)(1), the court 'may grant a motion for reconsideration when there has been an intervening change in the controlling law, newly discovered evidence, or a need to correct clear factual or legal error or prevent manifest injustice.'" CanPro Invs. Ltd. v. United States, 131 Fed. Cl. 528, 531 (2017) (quoting Biery v. United States, 818 F.3d 704, 711 (Fed. Cir.), cert. denied, 818 F.3d 704 (2016)); Del. Valley Floral Grp., Inc. v. Shaw Rose Nets, LLC, 597 F.3d 1374, 1383 (Fed. Cir. 2010); see also Clarke Health Care Prods., Inc. v. United States, 152 Fed. Cl. 570, 572 (2021). "Manifest," as in "manifest injustice," is "understood as clearly apparent or obvious." Cyios Corp. v. United States, 124 Fed. Cl. 107, 113 (2015) (internal quotation marks omitted); see also Lee v. United States, 130 Fed. Cl. at 252; Ammex, Inc. v. United States, 52 Fed. Cl. 555, 557 (2002), aff'd, 384 F.3d 1368 (Fed. Cir. 2004), cert. denied, 544 U.S. 948 (2005). "Where a party seeks reconsideration on the ground of manifest injustice, it cannot prevail unless it demonstrates that any injustice is 'apparent to the point of being almost indisputable.'" Griffin v. United States, 96 Fed. Cl. 1, 7 (2010) (quoting Pac. Gas & Elec. Co. v. United States, 74 Fed. Cl. 779, 785 (2006), aff'd in part, rev'd in part on other grounds, 536 F.3d 1282 (Fed. Cir. 2008)).

Furthermore, under RCFC 59(a)), "[m]otions for reconsideration must be supported 'by a showing of extraordinary circumstances which justify relief.'" Caldwell v. United States, 391 F.3d 1226, 1235 (Fed. Cir. 2004) (alteration added) (quoting Fru-Con Constr. Corp. v. United States, 44 Fed. Cl. 298, 300 (1999), aff'd, 250 F.3d 762 (Fed. Cir. 2000)), reh'g en banc denied (Fed. Cir.), cert. denied, 546 U.S. 826 (2005); Sci. Applications Int'l Corp. v. United States, 161 Fed. Cl. 373, 382 (2022) ("A motion for reconsideration under Rule 59 must be supported 'by a showing of extraordinary circumstances which justify relief.'" (quoting Biery v. United States, 818 F.3d at 711 (quoting Caldwell v. United States, 391 F.3d at 1235))). "Because prevailing on a motion for reconsideration requires the moving party to make a 'showing of extraordinary circumstances,' this Court does not often grant such motions." Hutchinson v. United States, 171 Fed. Cl. 570, 572-73 (2024) (quoting Fru-Con Constr. Corp. v. United States, 44 Fed. Cl. at 300; see also Advanced Simulation Tech. Inc. v. United States, 173 Fed. Cl. 693, 695 (2024) ("The standard for granting a motion for reconsideration of a final judgment is high.").

As described above, this court "may grant a motion for reconsideration when there has been an intervening change in the controlling law, newly discovered evidence, or a need to correct clear factual or legal error or prevent manifest injustice." Biery v. United States, 818 F.3d at 711. The court stated, in its May 21, 2019 Opinion:

Assuming the validity of plaintiff's argument that 15 U.S.C. § 638(r)(4) applies to more than just an initial Phase III award and to multiple Phase III awards, the Air Force perhaps should have considered awarding Lite

Machines a Phase III contract to the greatest extent practicable for a procurement involving the T1 Requirements. The statute at 15 U.S.C. § 638 and the Small Business Administration's policy directive, however, both indicate that the Air Force was not required to award a contract for the T1 Requirements to Lite Machines, as a result of the statute using the word "may." <u>See</u> 15 U.S.C. § 638(r)(1) ("[A] Federal agency <u>may</u> enter into a Phase III agreement with that business concern for additional work to be performed during or after the Phase II period." (emphasis added)); <u>see also</u> 15 U.S.C. § 638(e)(4)(C) (indicating that Phase III contracts are to be awarded "where appropriate"); Small Business Innovation Research Program Policy Directive, 77 Fed. Reg. at 46,820.

(emphasis in original). The court notes that the Small Business Innovation Research Program Policy Directive states that

> To <u>the greatest extent practicable</u>, agencies or their Government-owned, contractor-operated facilities, Federally-funded research and development centers, or Government prime contractors that pursue R/R&D or production developed under the SBIR Program, shall issue Phase III awards relating to technology, including sole source awards, to the SBIR awardee that developed the technology. Agencies shall document how they provided <u>this preference</u> to the SBIR awardee that developed the technology.

Small Business Innovation Research Program Policy Directive, 77 Fed. Reg. at 46,820 (emphasis added). After considering all relevant facts, both public and classified, this court likewise interpreted the statute at 15 U.S.C. § 638(r)(4) as indicating a preference and stated in its May 21, 2019 Opinion that "the language in 15 U.S.C. § 638(r)(4) expresses a pre-award preference." The court granted defendant's Motion to Dismiss Counts I and III of plaintiff's First Amended Complaint and deferred ruling on the other two counts. Moreover, the District Court Judge, presiding over the Arltons' suit in the Central District of California, found that this court's "analysis of the SBIR [Small Business Innovation Research] Statute in <u>Lite Machines</u> is persuasive." <u>Arlton et al v. AeroVironment, Inc.</u>, 2021 WL 1589302, at *9 (alteration added).

Therefore, plaintiff has failed to "demonstrate[] that any injustice is 'apparent to the point of being almost indisputable.'" <u>Griffin v. United States</u>, 96 Fed. Cl. at 7 (quoting <u>Pac. Gas & Elec. Co. v. United States</u>, 74 Fed. Cl. at 785) (alteration added). Accordingly, plaintiff's motion for reconsideration under RCFC 59(a)(1) is **DENIED**.

**IT IS SO ORDERED.**

s/Marian Blank Horn
**MARIAN BLANK HORN**
**Judge**